UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk:<br>Rita Sanchez | Court Reporter:<br>Not Reported |
| Attorneys Present for Plaintiff:<br>None Present | Attorneys Present for Defendant:<br>None Present |

**Proceedings (In Chambers):** ORDER RE: ADMINISTRATIVE APPEAL

Before the Court is an appeal on the administrative record brought by William S. Hart Union High School District (the "District"), seeking to overturn the decision of the Administrative Law Judge (the "ALJ") of the California Office of Administrative Hearings, OAH Case No. 2012120716, in favor of Nadine Romero ("Parent") on behalf of G.G. ("Student") (the "ALJ Decision," Lodging of Record Ex. 1, Bates No. OAH117 (Docket No. 27-1)).

The primary issues on appeal are: (a) whether a public agency is required to use the procedures of 34 C.F.R. § 300.502(b) when a parent makes a request for an independent educational evaluation ("IEE") 14 months after the agency's initial evaluation; (b) whether a public agency may offer to provide a reassessment under California law in lieu of an IEE rather than following the procedures of § 300.502(b); (c) whether the ALJ erred in denying the District the opportunity to establish certain defenses to any procedural violation; (d) whether the ALJ erred in determining that the District unnecessarily delayed in responding to Parent's IEE request; and (e) whether any procedural violation amounted to denial of a free appropriate public education ("FAPE").

The Court considered the parties' submissions, and a hearing was held on March 25, 2014. The decision of the ALJ is **AFFIRMED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

---

This action in federal court is, functionally, an appeal of the ALJ decision. Nominally, it is sometimes viewed as a trial based on the administrative record. *Compare Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993) (review of IDEA claims is "essentially . . . a bench trial based on the stipulated record"), *with Capistrano Unified Sch. Dist. v. Wartenberg ex rel. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995) (review is "in substance an appeal from an administrative determination"). If so deemed, the following constitutes the Court's Findings of Fact and Conclusions of Law. Fed. R. Civ. P. 52(a).

## I. BACKGROUND

The basic facts at issue here are not in dispute. The Court adopts in full the factual findings of the ALJ. (ALJ Decision at 2-4). The facts are summarized below.

Student G.G., a Valencia High School student, is eligible for special education as a result of his attention deficit hyperactivity disorder and specific learning disability. He received a psychoeducational assessment during the end of his seventh grade and the beginning of his eighth grade year, between June 1 and September 2, 2011. On September 7, 2011, the individualized education program ("IEP") team convened to review the assessment and prepare a behavior support plan. Parent Romero was present at the IEP meeting and did not object to the assessment.

On October 25, 2012, the IEP team convened in response to Student's recent behavioral issues and suspension from school. At this meeting, Parent objected to the psychoeducational assessment conducted in September 2011 and requested an independent educational evaluation ("IEE"). The District representatives offered to conduct a new public psychoeducational assessment instead, but Parent declined. Parent repeated her request for an IEE in a letter the next day, and the District advised Parent that it would not fund an IEE. No further discussions took place, and Student filed a due process complaint in the Office of Administrative Hearings of the State of California on December 19, 2012.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

A due process hearing was held on February 12, 2013. The record was closed on February 28, 2013, after the deadline given by the ALJ for written closing arguments. The ALJ Decision is dated March 13, 2013. The District filed the Complaint initiating this action on May 10, 2013. (Docket No. 1). The Complaint seeks reversal of the ALJ Decision. Student and Parent filed an Answer along with a Counterclaim seeking attorney's fees. (Docket No. 11).

## II. DISCUSSION

### A. Statutory Background

The Ninth Circuit has summarized the goals and substantive requirements of the IDEA, as follows:

> The IDEA provides federal funds to assist state and local agencies in educating children with disabilities, but conditions such funding on compliance with certain goals and procedures. . . . The IDEA's primary purpose is 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs[.]' . . . This purpose is achieved through the development of an individualized education program ('IEP') for each child with a disability. . . . The IEP is crafted annually by a team that includes a representative of the local educational agency, the child's teacher and parents, and, in appropriate cases, the child. . . . The IEP document must contain: information regarding the child's present levels of performance; a statement of annual goals and short-term instructional objectives; a statement of the specific educational services to be provided and the extent to which the child can participate in regular educational programs; and objective criteria for measuring the student's progress.

*Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (citations omitted).

"In addition to establishing substantive requirements, the IDEA also includes procedural safeguards which, if violated, may prevent a child from receiving a FAPE." *Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001). The Ninth Circuit has summarized these procedural safeguards as follows:

> [P]arents have the right to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of [a FAPE] to such child." . . . After making their complaint, the parents are entitled to "an impartial due process hearing . . . conducted by [an administrative agency], as determined by State law or by the State educational agency." . . . "[I]f either party is dissatisfied with the state educational agency's review, they may bring a civil action in state or federal court . . . ."

*Id.* (citations omitted).

**B. Standard of Review**

"In an action challenging an administrative decision, the IDEA provides that 'the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *Ojai*, 4 F.3d at 1471 (9th Cir. 1993) (citation omitted). A district court reviews the decision of the IDEA hearing officer in an administrative proceeding under a modified *de novo* standard, giving due weight to the ALJ's conclusions, particularly where the administrative decision is "careful, impartial and sensitive to the complexities presented." *Id.* at 1472, 1476; *see also Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) ("We give deference to the administrative findings of the Hearing Officer particularly when, as here, they are thorough and careful."). "Complete de novo review, however, is inappropriate." *Amanda J.*, 267 F.3d at 887. Courts should not "substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 206, 102 S. Ct. 3034, 73 L. Ed.

2d 690 (1982); *see also Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir. 1987) (stating same).

"The burden of proof in the district court rest[s] with . . . the party challenging the administrative decision." *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1103 (9th Cir. 2007). In this action, the District has the burden of proof.

**C. <u>Mootness</u>**

Parent argues that the present matter is moot because the District has funded an IEE and a new IEP has been developed and implemented. Because the Court does not have jurisdiction over a case that has been rendered moot, *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003), the Court addresses this issue first.

Parent's arguments are unavailing. The District funded an IEE in response to a binding order requiring it to fund the IEE. If the ALJ Decision erred in requiring the District to fund the IEE, the District would be entitled to reimbursement. Accordingly, the matter contains a live controversy and is not moot.

**D. <u>Does § 300.502(b) Impose Implied Limitations on Parents Seeking an IEE?</u>**

The ALJ ruled that § 300.502(b) unambiguously required the District either to file a due process complaint or to fund the requested IEE without an unnecessary delay, and the District's unnecessary delay was the basis of the ruling in favor of Parent. Section 300.502(b) provides, in full:

> (1) A parent has the has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency, subject to the conditions in paragraphs (b)(2) through (4) of this section.

(2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either—

(i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or

(ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing pursuant to §§ 300.507 through 300.513 that the evaluation obtained by the parent did not meet agency criteria.

(3) If the public agency files a due process complaint notice to request a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

(4) If a parent requests an independent educational evaluation, the public agency may ask for the parent's reason why he or she objects to the public evaluation. However, the public agency may not require the parent to provide an explanation and may not unreasonably delay either providing the independent educational evaluation at public expense or filing a due process complaint to request a due process hearing to defend the public evaluation.

(5) A parent is entitled to only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees.

34 C.F.R. § 300.502(b) (2013). The District argues that § 300.502(b) contains an implied reasonableness or temporal requirement, whereby the District need not file a due process complaint or fund the requested IEE if the IEE request was made after a reasonable time has passed following the evaluation to which Parent objected.

Furthermore, the District argues that it should be entitled to conduct a reassessment of the student before funding an IEE if the original disputed assessment is "stale."

### 1. The *Letter to Thorne* Interpretive Opinion

The District cites to an opinion of the Office of Special Education Programs ("OSEP"), the federal agency charged with developing the regulations for implementation of the IDEA, called *Letter to Thorne*, 16 IDELR 606 (1990). In *Letter to Thorne*, OSEP responded to a school district's question regarding a parent who had sought an IEE more than two years after the evaluation with which he disagreed. OSEP wrote that, while there is no specific timeline regarding how long after receiving the results of a public agency's evaluation a parent can wait to request reimbursement for an IEE, "it would not seem unreasonable for the public agency to deny a parent reimbursement for an IEE that was conducted more than two years after the public agency's evaluation. Therefore, it would not be necessary for the public agency to initiate a hearing in this situation." (RJN Ex. A).

Parent argues that *Letter to Thorne* is inapposite because it was written at a time when IEE requests were not limited by a statute of limitations. But as the District points out, even before a federal statute of limitations was introduced to certain IDEA claims in 2004, courts generally applied state statutes of limitations. *See C.M. v. Bd. Of Educ. of Henderson Cnty.*, 241 F.3d 374, 384-85 (4th Cir. 2001) (applying North Carolina's 60-day statute of limitations); *James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 769 (6th Cir. 2000) (applying Ohio's four-year statute of limitations). *Letter to Thorne* evidently would interpret § 300.502(b) to impose a federal reasonableness standard that is distinct from any specific statute of limitations.

*Letter to Thorne*, however, does not bind this Court's interpretation of § 300.502(b).

*Letter to Thorne* is in the nature of an advisory opinion. It is an "interpretive rule" that does not have the "force and effect of law" that accompanies an agency's

substantive rules developed pursuant to statutory authority. *Chrysler Corp. v. Brown*, 441 U.S. 281, 302, 99 S. Ct. 1705, 60 L. Ed. 2d 208 (1979). Interpretive rules are issued by an administrative agency "to advise the public of the agency's construction of the statutes and rules which it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L. Ed. 2d 106 (1995) (quoting *Chrysler*, 441 U.S. at 302 n.31 (internal quotation marks omitted). Interpretive rules are given reduced prudential authority because they are not made pursuant to a direct statutory authority and are not attended by the procedural rules, such as a public notice-and-comment period, of substantive rulemaking. *Chrysler*, 441 U.S. at 303. Although courts may find the agency's interpretation persuasive and adopt it, the final power of interpretation lies in the courts. *Id.*

*Letter to Thorne* provides no guidance on why a district would be entitled to deny a parent's request for IEE reimbursement when the IEE occurred more than two years after the original evaluation. The opinion is difficult to reconcile with the text of § 300.502(b), which states no limitation on when a parent can request an IEE, and appears to require an objecting district to present its defenses via a due process complaint and hearing. While giving due weight to the interpretive rule stated in *Letter to Thorne*, the Court chooses not to adopt OSEP's interpretation.

The District cites to an administrative case that relies on *Letter to Thorne, Placentia-Yorba Linda Unified School District v. Parents* ("*PYL*"), OAH Case No. 2012051153 (Cal. OAH 2012). (RJN Ex. B). In *PYL*, the ALJ simply determined that the two-year statute of limitations applicable to requests for due process hearings also applies to requests for an IEE. *PYL* is inapplicable here because the parties do not dispute that the two-year statute of limitations had not run.

**2. Proper Interpretation of § 300.502(b)**

The ALJ ruled that § 300.502(b) is unambiguous as to the District's responsibility once a parent has requested an IEE: the District must, "without unnecessary delay," either file a due process complaint to defend the appropriateness

of its assessment, or fund the IEE, unless the District shows at a hearing that the IEE obtained by the parent does not meet the applicable criteria.

The ALJ is correct that § 300.502(b) places the onus on the District to act without unnecessary delay upon the parent's request. The District contends that § 300.502(b) contains an implied requirement that the parent's request be made within a reasonable time; if not, the District argues, the District need not file a due process complaint or take any other action. Additionally, the District argues that it should be entitled to conduct a reassessment of the student if the original assessment is stale. The District's arguments have no textual basis in § 300.502(b), but the District argues that these implied requirement can be inferred from the purposes of the IDEA.

"The IDEA's primary purpose is 'to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs[.]'" *Amanda J.*, 267 F.3d at 882. The purpose is achieved through both substantive requirements, such as psychoeducational evaluations and the formulation and continual adjustment of IEPs, *see* 20 U.S.C. § 1414, and mandatory procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education," 20 U.S.C. § 1415(a). *See generally Rowley*, 458 U.S. at 191-207 (discussing the purpose of the IDEA and the importance of its substantive and procedural terms).

The IDEA's substantive terms are "general and somewhat imprecise." *Id.* at 205. Public agencies are required to conduct highly individualized evaluations and construct a plan tailored to the student's specific disabilities and needs. These plans are then judged against the substantive standards of the IDEA to determine whether the program constructed by the public agency was "reasonably calculated to enable the child to receive educational benefits." *Id.* at 206-07.

The procedural requirements, in contrast, are "elaborate and highly specific." *Id.* at 205. They "giv[e] parents and guardians a large measure of participation at every

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

stage of the administrative process." *Id.* The IDEA's emphasis on procedural protections "demonstrates the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP." *Id.* at 206.

A central purpose of the IDEA's procedural requirements is the protection of parents' right to participate in forming their children's education plans, because "[p]arents not only represent the best interests of their child in the IEP development process, they also provide information about the child critical to developing a comprehensive IEP and which only they are in a position to know." *Amanda J.*, 267 F.3d at 882.

The IDEA thus obligates public agencies rather than parents or students to ensure compliance with the procedural safeguards. The District's procedural responsibilities are not relieved by the students' or parents' failure to consent or cooperate. Rather, the Supreme Court and the Ninth Circuit have emphasized that a public agency's compliance with IDEA obligations is not contingent on parental consent or cooperation. *See Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1055 (9th Cir. 2012) (district's duty to annually review and revise IEP is not contingent on parental cooperation, because "the IDEA, its implementing regulations, and our case law all emphasize the importance of parental involvement and advocacy, even when the parents' preferences do not align with those of the educational agency"). The Ninth Circuit has specifically rejected a school district's argument that there is no denial of FAPE if the parents are equally or more at fault for a violation. *Id.*

The ALJ's interpretation of § 300.502(b) as containing an affirmative obligation of the District notwithstanding the parent's actions thus comports with the statutory purposes of the IDEA. The IDEA protects parents and students by requiring public agencies not only to plan and implement individualized education plans for disabled students, but also to comply precisely with procedural requirements designed to ensure that parents and students are consistently provided with opportunities to be involved in

the educational process. Section 300.502(b) fits into this scheme by placing the onus on the public agency to act "without unnecessary delay" when a parent disagrees with an evaluation of his or her student and requests an IEE.

If the District believed that it had defenses to the provision of an IEE at public expense, § 300.502(b) provides the method by which those defenses could be established. The District must present its defenses by filing a due process complaint without unnecessary delay. The District's proposed interpretation would render meaningless the requirement that it file a complaint without unnecessary delay, since the District could simply assert a valid defense without filing a due process complaint and force the parent to fulfill the District's procedural responsibilities. This interpretation has no basis in either the text or purpose of the IDEA.

The District argues that requiring the District to beat Parent in the race to the courthouse steps by filing a due process complaint is illogical and an elevation of form over substance. The Court agrees with the District and those courts that have found that the fact that the parent rather than the public agency filed the due process complaint does not affect the ability of the District to establish its defenses. *E.g.*, *Dudley v. Lower Merion Sch. Dist.*, No. 10-2749, 2011 WL 5942120, at *17-18 (E.D. Pa. Nov. 29, 2011) ("As part of their due process complaint, plaintiffs included a claim for reimbursement for the IEE. There was no reason to require the School District to file a separate due process complaint when the same issue was already being litigated in front of the hearing officer.").

The District is incorrect, however, in its position that its defenses to the provision of an IEE at public expense are also defenses to a failure to act without unnecessary delay upon Parent's request for an IEE. As discussed above, the Supreme Court and the Ninth Circuit have squarely held that substantive violations, such as the failure to provide an IEE at public expense when a parent is entitled to one, and procedural violations, such as the failure to respond without unnecessary delay to a parent's request for an IEE, are independently actionable and compensable under the

IDEA. *See Rowley*, 458 U.S. at 206-07; *Amanda J.*, 267 F.3d at 890. A defense to the substantive violation will not aid the District if it has not complied with the IDEA's procedural safeguards.

Finally, the District argues that interpreting § 300.502(b) to allow a parent an unfettered ability to seek an IEE would result in the absurd result that parents would be entitled to state-funded IEEs even for public evaluations that had occurred years earlier and had been superseded by mandatory reevaluations. *See PYL*, OAH No. 2012051153, at 8.

The response to this is twofold. ***First***, a parent's rights under the IDEA are generally limited by a two-year statute of limitations. *See* 20 U.S.C. § 1415(b)(6)(B); 34 C.F.R. § 300.507(a)(2). Although there is no authority binding this Court to the conclusion that the two-year period limits a parent's right to seek an IEE, a court faced with a parent's delay of over two years could avoid the purportedly absurd result by applying a two-year limitations period.

***Second***, it may well be that the District is correct in its contention that a parent's right to the provision of an IEE at public expense is limited by the school's right to conduct a reevaluation of the student when it determines that a reevaluation is warranted. 20 U.S.C. § 1414(a)(2)(A)-(B). It may be that when a public agency determines that an original evaluation is "stale" and conducts a reevaluation, the parent's disagreement with the original evaluation does not provide him or her with the right to an IEE at public expense.

That question is not before the Court here, however, because the District did not conduct a reevaluation. Although the District offered a reevaluation in lieu of an IEE and Parent declined, the District could have "pursue[d] the reevaluation by using the consent override procedures described in paragraph (a)(3) of this section." 34 C.F.R. § 300.300(c)(1)(ii). Use of the consent override procedures, including a mediation under 34 C.F.R. § 300.506 or a due process complaint under §§ 300.507-300.516, likely would have factored into the determination of whether the District acted without

unnecessary delay. The District did not use any of these procedures, however, and thus the Court need not determine whether a reevaluation would have mooted Parent's request for an IEE.

Furthermore, even if the "staleness" of an original evaluation is a defense to the provision of an IEE rather than a public reassessment, this defense should have been established at a hearing following the filing of a due process complaint without unnecessary delay.

Accordingly, the Court holds that neither the fact that Parent did not request an IEE at public expense until fourteen months after the original evaluation, nor the fact that the original evaluation was fourteen months old and the District offered a reevaluation in lieu of an IEE, relieved the District of its duty to comply with § 300.502(b) without unnecessary delay.

**E. <u>The District's Ability to Present Defenses</u>**

The District contends that the ALJ erred by refusing to allow the District to establish its defenses that would have removed Parent's right to an IEE at public expense. The District argues that it was denied the ability to present four defenses: (a) that the original evaluation was appropriate; (b) that the original evaluation was "stale" and thus the District was entitled to conduct a reevaluation; (c) that Parent unreasonably delayed in requesting an IEE; and (d) that its delay was *not* unnecessary.

The first three suggested defenses are not relevant to the question whether the District acted without unnecessary delay, and thus the ALJ correctly declined to hear those defenses. In effect, these defenses argue that under certain circumstances a parent's request for an IEE does not trigger the District's obligations under § 300.502(b), and thus it has no duty to avoid unnecessary delay. As discussed above, the Court interprets § 300.502(b) to have triggered the District's obligation upon Parent's request for an IEE at the IEP meeting on October 25, 2012. At that point, the District was obliged to act without unnecessary delay, and its defenses to the provision

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

of an IEE are not defenses to any failure to act without unnecessary delay. Accordingly, there was no error in the ALJ's refusal to allow the District to present these defenses.

The Court is aware of a Ninth Circuit decision, *Ford ex rel. Ford v. Long Beach Unified School District*, 291 F.3d 1086 (9th Cir. 2002), in which the Circuit ruled that "[i]f the District's assessment was adequate, the parents do not have a right to be reimbursed for an independent evaluation they procured." *Id.* at 1090. If read broadly, *Ford* supports the conclusion that adequacy of an assessment is a defense to a procedural violation of § 300.502(b). The *Ford* court did not, however, address whether a district's unnecessary delay in responding to a parent's request for a publicly funded IEE could itself be a procedural violation resulting in a denial of FAPE. It merely cited the plain language of § 300.502(b), which allows a public agency to establish the adequacy of its prior assessment in a due process hearing. *Ford* is thus distinguishable.

At the hearing, counsel for the District argued that the ALJ not only refused to consider its defenses to the provision of an IEE, but also refused to fully consider the District's defense that it had, in fact, acted without unnecessary delay. The District contended that the ALJ did not hold Student to his burden of showing an unnecessary delay, did not allow the District to present its evidence showing that any delay was necessary, and did not consider the evidence in the record in finding that there was an unnecessary delay.

None of the District's contentions are borne out in the administrative record. The ALJ made clear at the outset of the hearing that the primary issue remaining for resolution was whether the District had unnecessarily delayed in its response to Parent's IEE request. (Administrative Record at OAH00138). The District stated, "[O]ur defense is that the District conducted a legally compliant psychoeducational assessment . . . ." (*Id.* at OAH00139). The ALJ, while expressing her reservation that she believed the adequateness of the assessment was not a defense to failure to comply

with § 300.502(b), stated that she would allow the District to put on this defense within reasonable time constraints. (*Id.* at OAH00139-40). The District did in fact present evidence on this defense at length, and the record reveals no indication that the ALJ disallowed any evidence whatsoever.

The District also complained that the ALJ did not consider evidence regarding the novelty and complexity of Parent's request for an IEE, which justified, the District argues, its 55-day delay. The District argues that the ALJ should have considered the fact that Parent requested a neuropsychological evaluation, rather than a psychoeducational evaluation, more than 14 months after the prior psychoeducational evaluation, and the unusual nature of this request justified a delay of several weeks for the District to analyze its legal position before acting.

The District did not, despite several opportunities, present this evidence to the ALJ or even attempt seriously to argue this position. The District did not cross-examine Parent, who testified on direct examination that she had requested a psychoeducational evaluation, regarding whether she had in fact requested a neuropsychological evaluation. The District brought two witnesses who had participated in Student's original evaluation and questioned them exclusively on that evaluation. (*Id.* at OAH00165-206). It failed to present any evidence regarding its actions in the period between Parent's request and her due process complaint. It did not, for instance, examine Sharon Amrhein, the District employee responsible for reviewing and responding to Parent's written IEE request. Even the District's written closing argument does not argue that the delay was justified by the novelty of the request; it argues only that the delay was justified because the request was untimely and the original evaluation was appropriate.

There is no indication from the record that the ALJ did not allow the District to present its evidence that its delay was necessary. Furthermore, there is no reason to believe that the ALJ did not consider all the evidence before her in finding that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

District had unnecessarily delayed. Accordingly, there is no reason to remand this action to the ALJ for further development of this factual issue.

**F. Whether the District Acted Without Unnecessary Delay**

Although the Court determines that the ALJ neither erred in refusing to consider the District's irrelevant defenses nor refused to allow the District to present evidence to refute Student's claim of unnecessary delay, the Court must further review the ALJ's finding on the merits that the District did not act as required under § 300.502(b) without unnecessary delay.

The District argues the ALJ's finding that the District decided to "do nothing" in response to Parent's request for an IEE was not supported by the evidence, because the District sent Parent a letter on November 29, 2012, explaining that her IEE request was untimely and unwarranted and offering again to conduct a reevaluation.

The question before the Court is not whether the ALJ's finding that the District did "nothing" was correct. To the extent that the ALJ's finding is not supported by the evidence presented, the Court need not give that finding any deference. *See Amanda J.*, 267 F.3d at 887. The question, rather, on this modified *de novo* review of the ALJ Decision, is whether the District in fact acted without unnecessary delay. As the party challenging the ALJ Decision, the District bears the burden of showing that it acted without unnecessary delay.

Whether the District acted without unnecessary delay is a highly fact-dependent question. *See J.P. v. Ripon Unified Sch. Dist.*, No. 2:07-cv-02084-MCE-DAD, 2009 WL 1034993, at *7, 52 IDELR 125 (E.D. Cal. Apr. 15, 2009).

The following undisputed facts describe the District's actions in response to Parent's IEE request.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx) Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

Parent made the IEE request on October 25, 2012. The District indicates that Parent in fact requested a "neuropsychological evaluation," rather than a "psychoeducational assessment," but the District does not argue that Parent's request should not constitute a proper request for an IEE. (Pl.'s Brief at 7). The District indicated to Parent that it would not agree to fund an IEE. The same day, Parent reiterated her IEE request via a letter to the District. This letter made clear that Parent was "requesting an [I]ndependent Educational Evaluation (IEE)." (Declaration of Sharon Amrhein ("Amrhein Decl.") Ex. A (Docket No. 19-2)).

On November 29, 2012, 35 days later, the District responded in writing, stating that it would not fund an IEE because the request was "untimely and unwarranted" because the District had not conducted a current assessment and had never completed a neuropsychological evaluation. Parent did not respond to the District's letter, and Parent and Student filed a due process complaint 20 days later, on December 19, 2012.

The District submits the Declaration of Sharon Amrhein, the District's Director of Special Education, which indicates that Amrhein reviewed Parent's letter, considered the request, and spoke to her colleagues before responding after Thanksgiving break. (Amrhein Decl. ¶¶ 3-7).

As discussed above, once the District believed it had a valid defense to Parent's request for an IEE, the proper course of action under § 300.502(b) was to file a due process complaint without unnecessary delay. The District took no action other than to deny Parent's request for an IEE on October 25, and then reiterate its denial on the same basis 35 days later.

Neither the passage of 35 days before the District's responsive letter nor the 20 days between the letter and Parent's due process filing, by itself, clearly supports the conclusion that the District unnecessarily delayed. Courts considering similar periods of delay have focused on both the passage of time and the communications between the parties during that time. *Compare Pajaro Valley Unified Sch. Dist. v. J.S.*, No. C 06-0380 PVT, 2006 WL 3734289, at *3 (N.D. Cal. Dec. 15, 2006) (district

unnecessarily delayed by waiting 3 weeks after the request to send a letter asking the parent and student to reiterate its request, and then waiting 8 more weeks to file its due process complaint), *with L.S. ex rel. K.S. v. Abington Sch. Dist.*, No. 06-5172, 2007 WL 2851268, at *10 (E.D. Pa. 2007) (six-week delay, "largely comprised of the District's efforts to resolve the dispute and move the process along," was not unnecessary).

The critical fact supporting a finding of unnecessary delay is that the District maintained for the entire period between the IEE request and the eventual due process filing that it was not required to pay for an IEE. Discussions between the District and Parent reached an impasse on the very day that the IEE request was made. After that time, the District made no effort to mediate the dispute or conduct a reevaluation under the consent override procedures of 34 C.F.R. § 300.300(a)(3). While the ALJ was perhaps not technically correct in concluding that the District did "nothing," the District in fact took no meaningful step toward resolving the dispute; it only remained entrenched in its original position.

Also relevant is the fact that Parent, rather than the District, ultimately filed a due process complaint. Although the District is correct that it was not required to beat Parent in the race to the courthouse steps, the Court has no reason to believe that the District would ever have filed a due process complaint, given its position that it fulfilled its duty under § 300.502(b) simply by denying Parent's request as untimely and unwarranted. The race to the court analogy is inapposite here because the District wasn't participating in any race. But even giving the District every benefit of the doubt and assuming that it would have filed its complaint minutes after Student filed his, the District must still justify a 55-day delay in which it did not communicate with Parent except to reiterate its original denial of her request.

At the hearing, counsel for the District argued that the District delayed in responding to Parent's IEE request because the request was unclear and unusual, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx)** **Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

the District justifiably spent several weeks ascertaining its legal responsibility before responding to Parent.

The District argues that Parent's request for a neuropsychological evaluation took the District by surprise, because the District had not to that point conducted a neuropsychological evaluation. Ms. Amrhein avers that she discovered during her review of the letter sent after the manifestation IEP meeting that Parent in fact requested a type of evaluation that the District had not yet done. (Amrhein Decl. ¶ 4). The letter does not, however, use the term "neuropsychological," and it plainly requests an independent evaluation in response to the evaluation the District conducted. (*See id.* Ex. A ("Student disagrees with the ***current psycho-educational assessment*** and is requesting an [I]ndependent Educational Evaluation (IEE)." (emphasis added))). By October 25, 2012, then, the District should have known that Parent and Student were not seeking some new type of examination.

And while Parent's request differed from a common IEE request because it came 14 months after the original evaluation, this fact cannot by itself justify the school's 55-day delay. Perhaps the District could argue that it reasonably spent time researching its position if it had explained to Parent this justifiable reason for its delay, and then promptly followed up with her. Here, however, the District denied the request almost immediately after it was made. Over a month later, the District simply reiterated its denial on the same basis as the original denial. There is no evidence in the record that the District attempted to mediate with Parent, or asked her to clarify her request, or engaged in any meaningful discussion to resolve Parent's underlying concerns. The arguably complex legal ramifications of Parent's request cannot justify the District's failure to communicate with Parent or act promptly in response to the request.

Because the District has provided no valid justification for its delay in taking action as required by § 300.502(b) following Parent's request for an IEE, the Court finds that the District failed to act without unnecessary delay.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES—GENERAL

**Case No. CV-13-3382-MWF (PLAx) Date: April 9, 2014**

Title: William S. Hart Union High School District -*v*- Nadine Romero, Parent on Behalf of G.G.

### G. Whether the Violation of § 300.502(b) Resulted in a Denial of FAPE

The finding that the District violated the procedural safeguards of § 300.502(b) is not sufficient to show that Parent and Student are entitled to remedies under the IDEA. To constitute a remediable offense, the procedural violation must have resulted in a denial of FAPE. "[P]rocedural inadequacies that result in the loss of educational opportunity or seriously infringe the parents' opportunity to participate in the IEP formulation process or that caused a deprivation of educational benefits clearly result in the denial of a FAPE." *Amanda J.*, 267 F.3d at 892 (citations and internal quotation marks omitted).

The ALJ found that the District's procedural violation resulted in a denial of FAPE because it "interfered with [Parent's] opportunity to potentially learn valuable assessment information about Student, and become a well-informed member of Student's IEP team to effectively participate in the decision making process concerning his program." (ALJ Decision at 8).

The Court gives due weight to this conclusion. The ALJ was actively involved in the hearing on Student's complaint and rested its conclusion that FAPE was denied on evidence that the District took no meaningful action in response to Parent's request.

The District's violation of § 300.502(b)'s procedural safeguards was not merely a 55-day delay. The District has consistently taken the position that it was entitled to do nothing more than communicate to Parent that it had chosen to deny her request for an IEE. This obdurate refusal is not enough. Under § 300.502(b), the District was required to prove its defenses at a due process hearing. Its decision to leave Parent to wonder whether the District in fact was privileged to deny an IEE denied Parent her right to participate meaningfully in building Student's IEP.

The District objects to the ALJ's determination of a denial of FAPE because the ALJ stated that the District's violation only "potentially" would have resulted in valuable information. (Pl.'s Brief at 23). It argues that there is no way of knowing

whether any valuable information would have emerged had the District promptly agreed to an IEE, and thus the ALJ's conclusion was merely speculative.

The Court finds it difficult to believe that an IEE would not have revealed valuable information regarding Student's educational needs. Student's changed environment had resulted in new behavioral and educational issues resulting from his disability. The District even agreed that a reassessment of Student's disability and educational needs was warranted; presumably it believed that the reassessment would result in valuable information. There is no reason to believe that an assessment by an independent professional would be any less valuable than a public agency reassessment.

At any rate, the District's argument proves too much, because there is always a risk that an IEE may not reveal any information that affects a student's IEP. If this simple fact, without more, compelled the conclusion that denial of an IEE is not a denial of FAPE, then a public agency would never be required to fund an IEE.

Accordingly, the ALJ did not err in determining that the District's procedural violation was a denial of FAPE.

## III. CONCLUSION

The decision of the ALJ is **AFFIRMED**.

IT IS SO ORDERED.